IN THE CIRCUIT COURT FOR CALVERT COUNTY, MARYLAND

| | |
|---|---|
| DONALD J. CALLENDER<br>1020 Prince Frederick Blvd. Suite 302<br>Prince Frederick, Maryland 20678 | :<br>:<br>: |
| and | : |
| CONVERGENCE MANAGEMENT ASSOC.,<br>LLC d/b/a CONVERGEX CARIBBEAN, LTD.<br>1020 Prince Frederick Blvd. Suite 302<br>Prince Frederick, Maryland 20678 | :<br>:<br>:<br>: |
| Plaintiffs, | :    Case No.: |
| vs. | : |
| DOUGLAS ANTHES<br>20808 N. 27th Ave. #2038<br>Phoenix, AZ 85027 | :<br>:<br>: |
| And | : |
| DREAMER'S ENTERTAINMENT CLUB,<br>LLC, An Arizona Limited Liability Co. | :<br>: |
| Serve: Douglas Anthes, Statutory Agent<br>2811 W. Deer Valley Road, #2076<br>Phoenix, AZ 85027 | :<br>:<br>: |
| Defendants. | : |

FILED
2013 NOV 12  AM 10: 01
CALVERT COUNTY, CLERK
CIRCUIT COURT

## VERIFIED COMPLAINT
(Temporary Restraining Order and Preliminary and Permanent Injunctive Relief
Breach of Contract, Defamation, and False Light)

COME NOW, Plaintiffs, Donald J. Callender a/k/a "D.J. Callender" (hereinafter "Callender") and Convergence Management Associates, LLC d/b/a Convergex Caribbean, Ltd. (hereinafter "Convergex") (collectively known as "Plaintiffs") by and through their attorney Robert I. Damalouji, Esq. and The Damalouji Law Firm, LLC and for its Verified Complaint for Temporary Restraining Order, Preliminary and Permanent Injunctive Relief, Breach of Contract, Defamation and False Light, against Defendants Douglas Anthes (hereinafter "Anthes") and

Dreamer's Entertainment Club, LLC (hereinafter "Dreamer's Entertainment") (collectively known as "Defendants") hereby state as follows:

### Facts Common to All Counts

1. Plaintiff Callender is a resident of Calvert County, Maryland. At all times relevant hereto, Callender is the Managing Member of Convergex.

2. Plaintiff Convergex is a limited liability company organized and existing under the laws of the State of Maryland with its principal office located at 1020 Prince Frederick Blvd, Suite 302, Prince Frederick, MD 20678. At all times relevant hereto, Convergex is a global financial services company, in the business of enabling organizations and individuals to obtain access to sources of private capital funding for investment purposes. Convergex' role is to be "gatekeeper" organization to said sources of capital funding.

3. Defendant Anthes is an individual residing in the State of Arizona with an address known as 20808 N. 27th Avenue, #2038, Phoeniz, Arizona 85027.

4. Defendant Dreamer's Entertainment Club, LLC, upon information and belief, is a limited liability company organized and existing under the laws of the State of Arizona. Its Statutory Agent, for the purposes of service of process, among others is Douglas Anthes. Its Agent's and physical mailing address is 2811 W. Deer Valley Road #2076, Phoenix, Arizona, 85027.

5. That jurisdiction and venue are proper in this Court pursuant to MD. CODE CTS. & JUD. PROC. §§1-501 and 6-202. Further, the Parties contract confers jurisdiction via a governing law provision (law of the State of Maryland governs) and venue of acceptance of the Contract to Prince Frederick, Calvert County, Maryland.

6. In or about June 2013, Defendant Anthes was introduced to and contacted Convergex for the purpose of Defendant seeking approximately five million dollars ($5,000,000.00) in funding for a project known as "Dreamer's Entertainment Club, LLC", a proposed "start-up business offering completely new concept to the multi-entertainment industry in the Phoenix area...a concept combining the traditional entertainment center (bowling, billiards and sports bar) and adding the thrill of racing and nightclub scene with dancing and music..." (hereinafter the "Project").

7. On or about June 11, 2013, due to the confidential nature of among other things, information concerning the identity of, and exclusive nature of Convergex' sources of funding, Convergex and Defendants negotiated, entered into and executed a Mutual Non-Circumvention and Non-Disclosure Agreement ("NDA") that outlined the respective parties duties and obligations concerning same. A true and correct copy of said NDA is attached hereto and incorporated by reference as if fully set forth herein as <u>Exhibit A</u>.

8. Subsequently, on or about June 24, 2013 Convergex and Defendants negotiated, entered into, and executed a written Financial Services Agreement ("FSA") for the purpose of Defendants engaging the services of Convergex to have Convergex introduce Defendants and the Project to its private sources of capital to potentially fund the requested $5 million dollars of capital. A true and correct copy of said Financial Services Agreement is attached hereto and incorporated by reference as if fully set forth herein as <u>Exhibit B</u>.

9. Indeed, the FSA is clear and unambiguous as to its terms and conditions, as well as the distinct services the Convergex was to provide to the Defendants. Specifically, Section 1 of the FSA clearly references Convergex' scope of services:

> "CCL shall disseminate Project documentation (i.e. information provided to CCL by Client) to prospective sources (hereinafter "Sources") and CCL shall, refer,

introduce, identify or otherwise make known to Client the name, address, telephone number and, as applicable, the Internet access (URL or Email address) of one or more persons or entities as a interested source of funding."

Notably, Defendant knew and understood that the FSA is void as to any references of "guarantees" of funding from a potential Source. Any and all literature or marketing materials or website information that Convergex disseminates through public fora about its services specifically states that there are "no guarantees" about its services.

10. Further, the FSA outlines the duties and obligations of the Defendant, which included among other things, per Section 2(c) of the FSA the following:

"The Parties agree that the names, locations and contact data of Source(s), which CCL presents to Client represent valuable information, which may not be disclosed *at any time*, except with the prior written consent of CCL. To be most clear: <u>Client shall keep the identity as well as the content of discussions, negotiations and/or terms of this Agreement or Agreements with any and all Sources in the strictest of confidence, revealing such to no person—to specifically include Intermediaries-at any time, for any reason or Client shall be in material default of this Agreement.</u>"

11. As part of its obligation under the FSA (pursuant to Section 4 of the FSA) Defendant was to pay to Convergex a one-time fully deductible fee (deductible in the event that the Client obtains Funds from a Convergex Source, which is credited against the Placement Fee as outlined in said FSA) for Convergex' services based on a Fee Schedule, which corresponded to the amount of requested funding that Defendant was seeking. Per the parties agreement, Defendant was to pay to Convergex the total amount of $25,000.00 as a Good Faith Deposit, which was comprised of a $4,000.00 Engagement Meeting Fee, with the remainder amount ($21,000.00) as the Good Faith Deposit fee. The FSA is clear and unambiguous as to the fact that *no other fees* are due and owing to Convergex unless a Client gets funded from a Source, or in the event that a client desires that Convergex attend meetings on its [the client's] behalf—which would require that the client pay for Convergex'

4

direct expenses out of pocket, like travel expenses, etc. In the event (of a Client being funded), then Convergex is due a Placement Fee, as per Section 4(c) of the FSA, which contains a Standard Schedule of Placement Fees. Notably, again, to the extent that a Client obtains funding from a Source, the FSA stipulates that the Good Faith Deposit paid by a Client is credited against the Placement Fee.

12. Defendant paid to Convergex the required Good Faith Deposit and Engagement Meeting Fee in the collective amount of $25,000.00.

13. In consideration for payment of the required Good Faith Deposit and pursuant to its duties and obligations under the terms of the FSA, Convergex introduced Defendant to a funding Source and provided to Defendant the name, and contact information of said funding Source. Upon information and belief, Defendant had negotiations and discussed his Project with the funding source on numerous occasions.

14. Moreover, the FSA is clear and unambiguous as per Section 6(c) of said document that specifically states, among other things, that Convergex shall not be responsible for any escrow, accounting, appraisal, settlement, legal or other fees and charges incurred in connection with Client [Defendants] obtaining funds.

15. Defendants had actual knowledge, per the four corners of the negotiated FSA, that the Defendants would be solely responsible for any and all expenses (whatever they may be) related to the Source's due diligence underwriting fees and expenses—guessed (at the request of the Defendants) by Convergex to be approximately $15,000.00.

16. Upon information and belief, on or about August 19, 2013, during initial start-up negotiations for funding between Defendants and the funding Source, the funding Source

5

requested that Defendants pay a sum certain of monies, presumably for the funding Source's fees for due diligence and other underwriting administrative costs.

17. Upon information and belief, Defendants did not have the money or other resources to pay to the funding Source for its requested fees.

18. Immediately, on or about August 19, 2013, Defendant Anthes began contacting Plaintiffs demanding among other things, that Convergex refund all of the Good Faith Deposit paid to Convergex. Plaintiffs refused to do so.

19. Defendant Anthes on or about August 20, 2013, began making threats to Plaintiffs via email correspondence and phone calls that either Plaintiffs fully refund the Good Faith Deposit money, or if they don't, he will "publicize this scandal" and, "go to the FBI, IRS, Better Business Bureau, and the States Attorney's Offices of Maryland and Arizona".

20. Acting on his threats, on or about August 19, 2013, August 29, 2013 September 18, 2013, October 18, 2013 and October 30, 2013 Defendants began publishing false and defamatory statements on the internet to the general public about Plaintiffs on such internet sites as www.ripoffreport.com, www.complaintnow.com, and www.reviewstalk.com under Defendant Anthes' own name, and under the moniker "*huggie*", in the case of the posting on www.complaintnow.com. Said postings falsely claim, among other things, that Plaintiffs are "scams" or "rip offs" and that Plaintiff Convergex is not licensed or registered to do business in the State of Maryland, or "register [sic] with their respectful corporation commission [sic] to be in business". Both of Defendant's statements regarding Plaintiffs are false. See examples of the defamatory postings attached hereto and incorporated by reference as if fully set forth herein as Exhibit C.

21. Moreover, Defendants, through the postings have materially breached the plain and unambiguous terms of the NDA and FSA by disclosing the name and address information of the funding Source, Signature Equity Services.

22. Such postings, among other things, contain statements made by Defendants that are knowingly false, and that are specifically intended to cause Plaintiffs ridicule, contempt, hatred, and harm by discouraging others from having a good opinion of, or from associating or dealing with the Plaintiffs.

23. On or about October 15, 2013 Plaintiffs through counsel, via a written letter put Defendants on notice of its actionable conduct and demanded that Defendant cease and desist from posting such defamatory material and demanded that Defendant remove such postings. To date, Defendant has willfully and defiantly failed to remove such false and defamatory postings, and indeed, have posted additional defamatory statements against the demand to cease and desist, as detailed in said letter. A true and correct copy of said letter is attached hereto and incorporated by reference as if fully set forth herein as <u>Exhibit D</u>.

24. Plaintiffs have fulfilled all of its duties and obligations under the terms of the FSA and NDA.

25. Plaintiffs have fulfilled all conditions to the filing of this lawsuit.

### COUNT I
**(Temporary Restraining Order and Preliminary and Permanent Injunctive Relief)**

26. The allegations of Paragraphs 1 through 25 are restated and incorporated herein by reference.

27. As described herein the Defendant has knowingly made false and defamatory statements about the Plaintiffs on such websites such as www.ripoffreport.com,

www.complaintnow.com, and www.reviewstalk.com under Defendant Anthes' own name, and under the moniker "*huggie*", in the case of the posting on www.complaintnow.com.

28. The postings made by Defendants on the websites listed in paragraph 25 contain statements made by the Defendants that are knowingly false, and are specifically intended to cause Plaintiffs ridicule, contempt, hatred, and harm by discouraging others from having a good opinion of, or from associating or dealing with the Plaintiffs.

29. Plaintiffs have made demands to the Defendants to cease and desist all behavior which constitutes defamatory and actionable conduct, without success. Indeed, upon information and belief, Defendants have been defiant in response to the contrary, and continue to post defamatory statements in contradiction to the demand to cease and desist from such conduct.

30. The Defendants' conduct is actionable under such legal theories as defamation and false light.

31. There exists the strong likelihood that the Plaintiffs will succeed on the merits of their claim.

32. Unless the Defendants are restrained by this Court from continuing to post and publish knowingly false, misleading and defamatory statements the Plaintiffs (and Ordered by this Court to remove said posting and publications), Plaintiffs will suffer immediate, substantial and irreparable injury. Indeed, Plaintiffs have incurred substantial and irreparable injury to date by the loss of clients as a direct and proximate result from Defendants' postings.

33. The benefits to granting the immediate temporary restraining order are profound to the Plaintiffs and of little or no harm to the Defendant as the only restrictions it

would impose would be to forbid Defendant from posting such defamatory statements and remove said postings that are currently in the public fora.

    34.    The public interest is best served by granting the injunction.

**WHEREFORE**, the Plaintiffs respectfully demand:

A.    That this Court issue an immediate Order granting the Plaintiffs a temporary restraining order restraining and enjoining the Defendant from posting any further false and defamatory statements and postings on the internet or any other public fora regarding the Plaintiffs, and any other statements or postings that are specifically intended to cause Plaintiffs ridicule, contempt, hatred, and harm by discouraging others from having a good opinion of, or from associating or dealing with the Plaintiffs.

B.    That this Court issue an immediate Order granting the Plaintiffs a temporary restraining order enjoining and Ordering the Defendant to remove from the internet (including without limitation all postings and publications on the internet sites www.ripoffreport.com, www.complaintnow.com and www.reviewstalk.com) all false and defamatory statements and postings or any other public fora regarding the Plaintiffs, and any other statements or postings that are specifically intended to cause Plaintiffs ridicule, contempt, hatred, and harm by discouraging others from having a good opinion of, or from associating or dealing with the Plaintiffs.

C.    That this court issue an Order granting the Plaintiffs a preliminary injunction restraining and enjoining the Defendant from posting any further false and defamatory statements and postings on the internet or any other public fora

regarding the Plaintiffs, and any other statements or postings that are specifically intended to cause Plaintiffs ridicule, contempt, hatred, and harm by discouraging others from having a good opinion of, or from associating or dealing with the Plaintiffs.

D. That this court issue an Order granting the Plaintiffs a preliminary injunction enjoining and Ordering the Defendant to remove from the internet (including without limitation all postings and publications on the internet sites www.ripoffreport.com, www.complaintnow.com, and www.reviewstalk.com) all false and defamatory statements and postings or any other public fora regarding the Plaintiffs, and any other statements or postings that are specifically intended to cause Plaintiffs ridicule, contempt, hatred, and harm by discouraging others from having a good opinion of, or from associating or dealing with the Plaintiffs.

E. That this Court issue an Order granting the Plaintiffs a permanent injunction restraining and enjoining the Defendant from posting any further false and defamatory statements and postings on the internet or any other public fora regarding the Plaintiffs, and any other statements or postings that are specifically intended to cause Plaintiffs ridicule, contempt, hatred, and harm by discouraging others from having a good opinion of, or from associating or dealing with the Plaintiffs.

F. That this court issue an Order granting the Plaintiffs a permanent injunction enjoining and Ordering the Defendant to remove from the internet (including without limitation all postings and publications on the internet sites

www.ripoffreport.com, www.complaintnow.com and www.reviewstalk.com all false and defamatory statements and postings or any other public fora regarding the Plaintiffs, and any other statements or postings that are specifically intended to cause Plaintiffs ridicule, contempt, hatred, and harm by discouraging others from having a good opinion of, or from associating or dealing with the Plaintiffs.

G. That the Plaintiffs be granted costs and for such other and further relief this Court may deem just and proper, including granting Plaintiffs its attorneys fees.

## COUNT II
### (Defamation)

35. The allegations of Paragraphs 1 through 35 are restated and incorporated herein by reference.

36. The conduct of Defendants in posting the false and defamatory statements on the internet about Plaintiffs were/are intended to injure Plaintiffs in their profession and employment, and further impugning Plaintiffs in order to discourage others from having a good opinion of, or from associating or dealing with the Plaintiffs.

37. In the postings and publications listed on the websites hereinabove, Defendant Anthes knowingly made the aforementioned false and defamatory statements about Plaintiffs.

38. In the alternative, Defendant Anthes negligently made the aforementioned false and defamatory statements about Plaintiffs.

39. Defendant Anthes published the false and defamatory statements about Plaintiffs on various internet websites to the general public, which a reasonable person would understand the statements and publications to be defamatory.

11

40. Defendant Anthes acted with knowledge of the falsity of the statements and with the intent to cause harm to Plaintiffs including, ridicule, contempt, hatred, and other harm by discouraging others from having a good opinion of, or from associating or dealing with the Plaintiffs.

41. As a result of the false and defamatory statements published by Defendant Anthes, the character and reputation of Plaintiffs has been harmed, and Plaintiff Callender has suffered mental anguish and personal humiliation.

42. As a direct and proximate result of the false and defamatory publications, Plaintiffs have suffered significant direct and consequential damages, including but not limited to, a loss of business and clientele.

**WHEREFORE**, the Plaintiffs respectfully demand judgment against the Defendant in the amount of $250,000.00 or such other and further amount as provable at trial for compensatory damages, and $300,000.00 as punitive damages, plus any and all further relief to which Plaintiffs may be justly entitled, including its costs and attorneys fees.

## COUNT III
### (Invasion of Privacy-False Light)

43. The allegations of Paragraphs 1 through 42 are restated and incorporated herein by reference.

44. The Defendants' actions as described herein, including posting defamatory and false publications on the internet websites regarding the Plaintiffs is highly offensive to any reasonable person.

45. That despite the fact that these statements were known to be false by the Defendants, Defendants have continued to repeatedly make them in order to place the Plaintiffs in a false light by attributing to them conduct and characteristics which were untrue.

12

46.     As a direct and proximate result of the Defendants actions and omissions, Plaintiffs have suffered significant emotional distress and other consequential damages, including but not limited to a significant loss of business and clientele.

**WHEREFORE**, Plaintiffs respectfully demand judgment against the Defendant in the amount of $250,000.00 or such other and further amount as provable at trial for compensatory damages, and $300,000.00 as punitive damages, plus any and all further relief to which Plaintiffs may be justly entitled, including its costs and attorneys fees.

## COUNT IV
### (Breach of Contract)

47.     The allegations of Paragraphs 1 through 46 are restated and incorporated herein by reference.

48.     As described herein, by virtue of the postings and publications on the internet, Defendants, in material breach of the FSA and NDA, among other things, disclosed the name and address information of the funding Source, in complete and wanton disregard of the terms and conditions of the NDA and FSA.

49.     Specifically, Defendant materially breached Section 2(c) of the FSA, which states the following:

> "The Parties agree that the names, locations and contact data of Source(s), which CCL presents to Client represent valuable information, which may not be disclosed *at any time,* except with the prior written consent of CCL. To be most clear: <u>Client shall keep the identity as well as the content of discussions, negotiations and/or terms of this Agreement or Agreements with any and all Sources in the strictest of confidence, revealing such to no person—to specifically include Intermediaries-at any time, for any reason or Client shall be in material default of this Agreement.</u>"

50.     Specifically Defendant materially breached Paragraphs 2 and 4, respectively of the NDA, which states the following:

13

> "The Parties will maintain complete confidentiality regarding each other's business methods, procedures, Source(s) and/or affiliates and will only disclose such only to parties named in advance, pursuant to the express written permission of the party who had made available said Source and, …".

And

> The Parties will not disclose any name(s), addresses, telephone/facsimile number(s) of any contact(s) revealed by either Party to any third party, and…

51. Plaintiffs did not provide any written permission or other authorization for Defendants to disclose any Source information to the general public or to any third party; which Defendant did without regard to the terms and conditions of the NDA and FSA.

52. As such, Defendants actions and/or omissions constitute a material breach(es) of the Parties' Agreements, that has directly and proximately caused Plaintiffs significant direct and consequential damages.

53. Pursuant to the terms of the FSA and the NDA, in the case of a breach by Defendants of the terms thereof, Plaintiffs are entitled to a liquidated amount of damages, equal to the full amount of the Placement Fee Convergex would be entitled to, if Defendants were successful in obtaining funding from the Source—specifically the amount of $200,000.00.

54. Plaintiffs have fulfilled all conditions precedent to the bringing of this action.

**WHEREFORE**, the Plaintiffs demand judgment against the Defendant, in the amount $200,000.00, or such other and further amount as provable at trial for compensatory damages, plus any and all further relief to which Plaintiffs may be justly entitled, including its costs and attorneys fees.

I HEREBY CERTIFY UNDER THE PENALTIES OF PERJURY THAT THE INFORMATION CONTAINED HEREIN IS TRUE TO THE BEST OF MY KNOWLEDGE, INFORMATION AND BELIEF.

_____
Donald J. Callender, Individually

_____
Convergence Management Associates, LLC
d/b/a Convergex Caribbean, Ltd.
By: Donald J. Callender, Managing Member



Respectfully submitted,


By Counsel for Plaintiffs

_____
Robert I. Damalouji
The Damalouji Law Firm, LLC
135 West Dares Beach Rd. Suite 209A
Prince Frederick, MD 20678
(410) 535-5008