IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DONALD J. CALLENDAR, et al.

    v.                 :   Civil Action No. DKC 14-0121

DOUGLAS ANTHES, et al.

**MEMORANDUM OPINION**

Presently pending and ready for review in this defamation case are four motions: (A) a motion to remand filed by Plaintiffs Donald J. Callender and Convergence Management Associates, LLC d/b/a Convergex Caribbean Ltd. (ECF No. 28); (B) a motion to dismiss filed by Defendants Douglas Anthes and Dreamer's Entertainment Club, LLC. (ECF No. 11); and (C) two motions to seal: one filed by Defendants and one filed by Plaintiffs. (ECF Nos. 15 and 33). The issues have been briefed and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motions to seal will be denied. The motion to remand will be granted and the case will be remanded to the Circuit Court for Calvert County, Maryland.

## I.    Background

Plaintiff Donald J. ("DJ") Callender is head of Plaintiff Convergence Management Associates, LLC d/b/a Convergex

Caribbean, Ltd.  Both are citizens of Maryland.  Convergex acts as an investor matchmaker: organizations and individuals come to Convergex seeking private capital investment.  Convergex evaluates the investment and then puts them in touch with potential investors.

Defendant Douglas Anthes is the agent of Defendant Dreamer's Entertainment Club, LLC.  Both are citizens of Arizona.  Mr. Anthes – through Dreamer's – proposed a "start-up business offering [a] completely new concept to the multi-entertainment industry in the Phoenix area . . . a concept combining the traditional entertainment center (bowling, billiards, and sports bar) and adding the thrill of racing and nightclub scene with dancing and music."  (ECF No. 2 ¶ 6, Verified Complaint).  Defendants sought approximately $5,000,000 of funding.

In June 2013, Mr. Anthes contacted Convergex to find investors.  On June 11, 2013, the parties signed a "Mutual Non-Circumvention, Non-Disclosure Agreement" ("NDA").  Three paragraphs of the NDA are relevant here:

> (2) The parties will maintain complete confidentiality regarding each other's business methods, processes, Source(s) and/or affiliates and will disclose such only to parties named in advance, pursuant to express written permission of the Party who had made available said source.

(4) The parties will not disclose any
name(s), address(es), telephone/facsimile
number(s) of any contact(s) revealed by
either party to any third party.

(8) This Agreement is valid for any and all
transaction(s) between the parties hereto
and is enforceable only in the Courts of the
State of Maryland, Calvert County, United
States of America, and the signing Parties
hereby accept such selected jurisdiction as
the exclusive venue for the resolution of
any dispute(s).

(ECF No. 2, Ex. A). The parties subsequently signed a
"Financial Services Agreement" ("FSA"). The FSA is dated June
24, 2013, although Defendants contend that it was in fact signed
in August 2013. The FSA required Defendants to pay a $4,000 fee
to meet with Plaintiffs and a $21,000 "Good Faith Deposit." If
Plaintiffs failed to bring a willing and capable funding source
forward to Defendants, the $21,000 would be refunded
immediately, upon demand. (ECF 2-1, at 5). Relevant for
present purposes are two clauses of the FSA:

2.C: The Parties agree that the names,
locations and contact data of Source(s),
which [Plaintiffs] present to [Defendants]
represent valuable information, which may
not be disclosed *at any time*, except with
the prior written consent of [Plaintiffs].
To be most clear: [Defendants] shall keep
the identity, as well as the content of
discussions, negotiations and/or terms of
this Agreement or Agreements with any and
all Sources in the strictest of confidence,
revealing such to no person – *to
specifically include Intermediaries* – at any
time, for any reason or Client shall be in
material default of this Agreement.

3

> This provision of the Agreement between the
> Parties requires Client initials here with
> the specific understanding that it will
> survive the termination or expiration of the
> Agreement, as a whole.
>
> 7.B: This Agreement shall be governed by and
> construed in accordance with the laws of the
> State of Maryland and shall be deemed to
> have been accepted and entered into at
> [Convergex Caribbean, Ltd.]'s place of
> business in Prince Frederick, Maryland.

(ECF No. 2-1, at 4-5, 7) (emphases in original).

On July 23, 2013, Mr. Anthes wired $4,000 to Plaintiffs to secure a meeting. They met at a restaurant in Washington, DC on August 3, 2013. Mr. Anthes wired the $21,000 balance of the Good Faith Deposit to Plaintiffs on August 13, 2013. The next day, Defendants received an email from Signature Equity Services Group in Nashville, Tennessee, to schedule a call. On August 16, 2013, following the call, Signature sent a financial services agreement setting forth a non-refundable initial underwriting fee of $15,900. Defendants could not afford this and subsequently learned that Signature's corporate status had been administratively dissolved on August 13, 2013, two days before the call. On August 19, 2013, Mr. Anthes called Mr. Callender and let him know that he could not pay Signature's underwriting fee and demanded return of his $21,000 Good Faith Deposit. Mr. Callender refused. The next day Mr. Anthes – through email and telephone – told Plaintiffs that either they

fully refund the Good Faith Deposit or he will "publicize this scandal" and "go to the FBI, IRS, Better Business Bureau, and the States Attorney's Offices of Maryland and Arizona."   Mr. Anthes made good on his promise and posted several allegedly defamatory postings to multiple consumer protection websites. (*See* ECF No. 2-1, at 9-15).[1]

On October 15, 2013, Plaintiffs' counsel sent a cease and desist letter to Defendants, demanding that they stop posting defamatory statements and immediately remove the statements on RipoffReport.com.  (ECF No. 2-1, at 16).

On November 12, 2013, Plaintiffs filed a verified complaint in the Circuit Court for Calvert County, Maryland.  (ECF No. 2). The complaint seeks a temporary restraining order and preliminary and permanent injunctive relief, and asserts claims of defamation, invasion of privacy – false light, and breach of contract, seeking $700,000 in compensatory damages and $600,000 in punitive damages.  The Circuit Court granted Plaintiffs' request for a TRO on November 15, 2013, ordering Defendants not to post any further false and defamatory statements to the Internet or any other public fora regarding Plaintiffs, and to refrain from making any other statements or postings that are specifically intended to cause Plaintiffs ridicule, contempt,

---

[1] The websites were RipoffReport.com, ComplaintNow.com, and ReviewsTalk.com.

hatred, and harm by discouraging others from having a good opinion of, or from associating or dealing with Plaintiffs; to remove from the Internet all such postings, including those made to RipoffReport.com, ComplaintNow.com, and ReviewsTalk.com; and to restore and preserve the status quo as it existed on or before August 19, 2013. (ECF No. 4).

On December 18, 2013, Plaintiffs filed a motion to extend the TRO, arguing that the allegedly defamatory postings remain on the Internet and, in fact, Mr. Anthes made a posting to RipoffReport.com after the TRO was entered. (ECF No. 5). The motion was granted and the TRO was extended to January 22, 2014, and a hearing date on the motion for a preliminary injunction was set for January 21, 2014. (ECF No. 6).

Defendants were officially served with the state court complaint on December 31, 2013. Defendants removed to this court on January 15, 2014, citing diversity jurisdiction, 28 U.S.C. § 1332. (ECF No. 1). They answered the complaint, filed counterclaims, and filed a third party complaint against Convergex Carribean, Ltd. on January 21, 2014. (ECF No. 13).

On January 22, 2014, Plaintiffs filed a motion to extend the TRO pending their motion to remand that will be filed or, in the alternative, extend the TRO pending a hearing on a preliminary injunction. (ECF No. 19). The matter was fully

briefed and a hearing was held on January 28, 2014, when the motion was denied.

Plaintiffs filed their motion to remand on February 3, 2014. (ECF No. 28). Defendants opposed on February 21, 2014 (ECF No. 36), and Plaintiff replied on March 10, 2014 (ECF No. 41).[2]

## II. Analysis

### A. Motion to Remand

Plaintiffs move to remand this case to the Circuit Court for Calvert County, Maryland, pointing to the NDA's forum selection clause. That clause states:

---

[2] Defendants filed what they titled "Rebuttal in Opposition to Plaintiffs' Motion to Remand" on March 25, 2014. (ECF No. 43). This is a surreply, which may not be filed unless otherwise ordered by the court. Local Rule 105.2(a). Although a district court has discretion to allow a surreply, surreplies are generally disfavored. *Chubb & Son v. C.C. Complete Servs., LLC*, 919 F.Supp.2d 666, 679 (D.Md. 2013). A surreply may be permitted "when the moving party would be unable to contest matters presented to the court for the first time in the opposing party's reply." *Khoury v. Meserve*, 268 F.Supp.2d 600, 605 (D.Md. 2003) (citation omitted). By contrast, "[a] motion for leave to file a surreply may be denied when the matter addressed in the reply is not new." *Marshall v. Capital View Mut. Homes,* No. RWT-12-3109, 2013 WL 3353752, at *3 (D.Md. July 2, 2013) (citation omitted).

Construing Defendants' filing as a motion to file a surreply, their motion will be denied and the filing will be disregarded. They seek to argue about the effect of the FSA's integration clause. Plaintiffs did not raise this issue for the first time in their reply. In fact, as will be discussed below, it was Defendants who argued in their opposition that the FSA superseded the NDA.

> This Agreement is valid for any and all
> transaction(s) between the Parties hereto
> and is enforceable only in the Courts of the
> State of Maryland, Calvert County, United
> States of America, and the signing Parties
> hereby accept such selected jurisdiction as
> the exclusive venue for the resolution of
> any dispute(s).

(ECF No. 2-1, at 3). The parties are listed as "Convergence Management Associates, LLC dba Convergex Caribbean, Ltd.," legally represented by "D.J. Callender, Managing Partner," and "Dreamer's Entertainment Club, LLC," legally represented by "Doug Anthes, Owner." (*Id.*).

Generally, a remand to state court is appropriate where the court either lacks subject matter jurisdiction over the case or there is some defect in the removal process. *See* 28 U.S.C. § 1447(c) (motion to remand based on lack of subject matter jurisdiction may be brought "at any time before final judgment," while a motion "on the basis of any defect other than subject matter jurisdiction must be made within 30 days after filing of the notice of removal"). Motions to remand on the basis of a forum-selection clause, however, are based on neither lack of jurisdiction nor any defect. As the United States Court of Appeals for the Ninth Circuit explained in *Kamm v. ITEX Corp.*, 568 F.3d 752, 756 (9th Cir. 2009):

> A forum selection clause operates outside of
> the various requirements for removal
> specified in [28 U.S.C.] §§ 1441–1453. The
> existence of such a clause does not render

removal "defective" as we have understood that term in our cases decided under § 1447(c). Instead, a forum selection clause is similar to other grounds for not exercising jurisdiction over a case, such as abstention in favor of state court jurisdiction under *Younger v. Harris,* 401 U.S. 37 (1971), and related abstention cases, or a refusal to exercise supplemental jurisdiction and a resulting remand to state court under 28 U.S.C. § 1367(c). The Supreme Court has explicitly held that remands based on abstention and a refusal to exercise supplemental jurisdiction are not covered by § 1447(c). *See Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706, 711-12 (1996) (abstention); *Carnegie-Mellon Univ. v. Cohill,* 484 U.S. 343, 355 n.11 (1988) (supplemental jurisdiction); *see also Kircher v. Putnam Funds Trust,* 547 U.S. 633, 640 (2006) (discussing *Quackenbush* without stating that it is no longer good law following the 1996 amendment of § 1447(c)).

*See also Foster v. Chesapeake Ins. Co., Ltd.*, 933 F.2d 1207, 1212 n.7 (3[d] Cir. 1991) ("A forum selection clause does not oust a court of subject matter jurisdiction, and abstention is, of course, predicated on the notion that while the federal court has subject [matter] jurisdiction, it should decline to *exercise* it.") (internal citation omitted; emphasis in original)). Thus, as a prudential matter, federal courts should give effect to a valid and enforceable forum-selection clause, despite the fact that the case was properly removed. *Cf. Atl. Marine Constr. Co., Inc. v. U.S. Dist. Court for W. Dist. of Tex.*, 134 S.Ct. 568, 581 (2013) ("When the parties have agreed to a valid-forum

selection clause, a district court should ordinarily transfer the case to the forum specified in that clause.").

Courts considering remand motions in this context have uniformly conducted their analyses in terms of whether a given forum-selection clause constitutes a waiver of the right to remove. *See, e.g., Yakin v. Tyler Hill Corp.,* 566 F.3d 72, 76 (2[d] Cir. 2009) ("To the extent that a forum selection clause binds diverse parties by its express terms to a specific jurisdiction that is not federal, it waives a statutory right to remove."); *Global Satellite Commc'n Co. v. Starmill U.K. Ltd.,* 378 F.3d 1269, 1272 (11th Cir. 2004) ("forum selection clause may constitute a waiver of a defendant's right to remove an action to federal court."); *cf. Atl. Marine*, 134 S.Ct. at 582 ("when a plaintiff agrees by contract to bring suit only in a specified forum – presumably in exchange for other binding promises by the defendant – the plaintiff has effectively exercised its 'venue privilege' before a dispute arises."). In determining whether a party has contractually waived its right to remove, courts should use "the same benchmarks of construction and, if applicable, interpretation as it employs in resolving all preliminary contractual questions." *Welborn v. Classic Syndicate, Inc.*, 807 F.Supp. 388, 391 (W.D.N.C. 1992) (*quoting Foster,* 933 F.2d at 1215 n.15). Accordingly, resolution of the instant motion turns on whether the NDA's forum-selection clause

constitutes a waiver of Defendants' right to remove the case to this court. In deciding that issue, the court must determine the validity of the forum-selection clause.

"The initial step in analyzing the validity of a forum-selection clause is to determine whether state or federal law should be applied." *Koch v. Am. Online, Inc.*, 139 F.Supp.2d 690, 692 (D.Md. 2000). Because this is a diversity action, the substantive law of Maryland is applied to analyze the forum-selection clause. *Silo Point II LLC v. Suffolk Constr. Co., Inc.*, 578 F.Supp.2d 807, 809 (D.Md. 2008). Maryland courts have adopted the federal standard in analyzing the enforceability of a forum-selection clause. *Gilman v. Wheat, First Sec., Inc.*, 345 Md. 361, 371-78 (1997).

In *M/S Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 10 (1972), the Supreme Court of the United States held that mandatory forum-selection clauses "are *prima facie* valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *See also Pee Dee Health Care, P.A. v. Sanford,* 509 F.3d 204, 213 (4th Cir. 2007). The court's task in "determining the enforceability and applicability" of a forum-selection clause "is threefold":

> First, it must establish whether the clause
> is mandatory. If so, the clause is
> presumptively enforceable. Second, the court
> must establish whether the clause is
> presumptively enforceable against the

> particular claims in dispute, i.e.[,]
> whether the claims fall within the scope of
> the clause. If it finds that they do fall
> within the clause's scope, then that clause
> presumptively applies to bar their
> adjudication outside its designated forum.
> Third and finally, the court must decide
> whether the party opposing the clause's
> enforcement has rebutted the presumption of
> enforceability by proving that enforcement
> would be unreasonable. If it has not, the
> clause will be enforced.

*Varsity Gold, Inc. v. Lunenfeld,* Civ. No. CCB-08-550, 2008 WL 5243517, at *2 (D.Md. Dec. 12, 2008) (internal citations and quotation omitted).

First, there is no question that the clause is mandatory and Defendants do not argue otherwise. A mandatory provision is "one containing clear language showing that jurisdiction is appropriate only in the designated forum." *Davis Media Grp., Inc. v. Best Western Int'l, Inc.*, 302 F.Supp.2d 464, 467 (D.Md. 2004) (*quoting Koch*, 139 F.Supp.2d at 693). A permissive clause, by contrast is one that "permits jurisdiction in the selected forum without precluding it elsewhere." *Davis*, 302 F.Supp.2d at 467 (internal quotation marks and citation omitted). The NDA clause is clearly mandatory as it states that it is "enforceable *only* in the Courts of the State of Maryland, Calvert County, . . . and the signing parties hereby accept such jurisdiction as the *exclusive venue for the resolution of any disputes*." (ECF No. 2-1, at 3) (emphases added).

12

Defendants' arguments are principally focused on whether the NDA's forum selection clause governs this case. They make three arguments: first, they argue that the Plaintiffs were not parties to the NDA; second, they state that Defendant Anthes is not a party to the NDA; and third, they posit that the FSA supersedes the NDA. Taking these arguments in order, Defendants point to the NDA, which states that it is between "Convergence Management Associates, LLC dba Convergex Caribbean, Ltd." and "Dreamer's Entertainment Club, LLC." Defendants contend that Convergex Caribbean, Ltd. ("Convergex") and Convergence Management Associations, Ltd. ("Convergence") are in fact separate legal entities for which using the "d/b/a" designation is improper. *See Bushey v. N. Assurance Co. of Am.*, 362 Md. 626, 637-38 (2001) ("doing business as" is merely descriptive of the person or corporation who does business under some other name and does not create a distinct legal entity). Defendants contend that only Convergex is the proper party to the NDA as evidenced by the fact that the NDA was printed on Convergex's letterhead and Mr. Callender signed the NDA on behalf of Convergex. The complaint, however, lists the Plaintiffs as Mr. Callender and "Convergence Management Assoc., LLC d/b/a Convergex Caribbean, Ltd," much like the NDA. Defendants argue that Convergence is the Plaintiff in this case but was not a party to the NDA. Conversely, Defendants argue that Convergex

13

is not a Plaintiff but was the only party to the NDA.  While Convergex has now entered this case as a third party defendant, it was not a party at the time of removal, therefore its current presence is not sufficient.  *See Francis v. Allstate Ins. Co.*, 709 F.3d 362, 367 (4th Cir. 2013) ("The removability of a case depends upon the state of the pleadings and the record at the time of the application for removal." (quotations and citations omitted)).

Plaintiffs dispute Defendants' contention that Convergence does not do business as Convergex Caribbean, Ltd.  While it is telling that Defendants filed a third-party complaint against "Convergex Caribbean, Ltd.," which Plaintiffs admitted is a "Bahamas International Corporation doing business in the Bahamas and in Maryland" (ECF No. 34, at 2, Third Party Defendant Answer), ultimately the status of Convergence and Convergex is a red herring for the present dispute.  The terms of the contract clearly identify Convergence as a party to the NDA.  Defendants do not dispute that Convergence is a legal entity.  Convergence is a Plaintiff in this action.  The contention that Convergex might also be a party to the NDA is immaterial.  Consequently, the NDA and its forum selection clause encompasses Plaintiffs and Defendants.

Next, Defendants argue that only Defendant Dreamer's – not Defendant Anthes – was a party to the NDA and therefore the

NDA's forum selection clause only applies to Dreamer's.  This argument will be rejected as it is well-established that non-signatories to an agreement are nevertheless "covered by choice of forum clauses so long as their alleged conduct is 'closely related' to the contract in question." *Belfiore v. Summit Fed. Credit Union*, 452 F.Supp.2d 629, 633 (D.Md. 2006) (*citing Hugel v. Corp. of Lloyd's*, 999 F.2d 206, 209 (7th Cir. 1993)).  The allegations make clear that Mr. Anthes is the sole officer of Dreamer's.  He engaged in discussions with Plaintiffs and signed the NDA and FSA as Dreamer's agent.  It is reasonable to conclude that such an officer is "closely related to the contract in question," and Defendants have presented no evidence suggesting otherwise, as was their burden. *See Ruifrok v. White Glove Rest. Servs.*, No. DKC 10-2111, 2010 WL 4103685, at *6 (D.Md. Oct. 18, 2010) (high-ranking officers of company were closely related to employment contract between company and employee).  Furthermore, inasmuch as all defendants must join in removal, if Dreamer's waived its right to do so, the case cannot be removed, even if Mr. Anthes is not bound by the clause.

Defendants' final argument is that the NDA – and its forum selection clause – was superseded by the FSA, which contains no forum selection clause, but only a choice of law provision.  The relevant clause states:

> This Agreement shall be governed by and
> construed in accordance with the laws of the
> State of Maryland and shall be deemed to
> have been accepted and entered into at CCL's
> place of business in Prince Frederick,
> Maryland.

(ECF No. 2-1, at 7). Unlike the NDA, the FSA does not include a forum selection clause naming Calvert County Circuit Court, or any other court, as the exclusive forum. Plaintiffs do not dispute that the FSA was signed after the NDA. Therefore, Defendants argue, the NDA was modified and updated by the more comprehensive FSA, including the clause that provides only a choice of law and is silent on forum selection. Accordingly, Defendants believe that "[t]he Arizona-based Defendants are entitled to the benefits of the less restrictive choice of law provision in the [FSA]." (ECF No. 36, at 5).

This argument will be rejected. The NDA's forum selection clause states that it is "valid for *any and all transactions between the Parties hereto*, . . . and the signing Parties hereby accept [Calvert County Circuit Court] as the exclusive venue for the resolution of *any dispute(s)*." (ECF No. 2-1, at 3) (emphases added). Defendants do not point to any controlling portion of the FSA, or any legal authority for that matter, to

support their contention that the more recent FSA obviates the NDA's forum selection clause.[3]

Defendants' remaining argument contends that enforcement of the forum selection clause would be unreasonable. In *Bremen,* 407 U.S. at 10, the Supreme Court established that the presumption of enforceability of a forum-selection provision may be overcome by a clear showing that enforcement would be "'unreasonable' under the circumstances." Such provisions may be found unreasonable if:

> (1) their formation was induced by fraud or overreaching; (2) the complaining party "will for all practical purposes be deprived of his day in court" because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law may deprive the plaintiff of a remedy; or (4) their enforcement would contravene a strong public policy of the forum state.

---

[3] While the FSA does contain an integration clause, that does not change the analysis. Integration clauses are more likely to be enforced literally when the same parties have entered into more than one agreement addressing the same subject. *See Hercules Powder Co. v. Harry T. Campbell Sons Co.,* 156 Md. 346 (1929). In such a circumstance, the later-executed agreement annuls any prior agreements addressing the same subject because the agreements conflict and cannot be construed together. *See id.* When separately-executed contracts between the same parties do not have conflicting provisions and are entered into as part of a single transaction, however, those agreements will be construed together even when they are executed at different times and do not refer to each other. *See Rocks v. Brosius,* 241 Md. 612, 637 (1966). The NDA and FSA were part of the same Dreamer's transaction but the terms do not conflict and can be construed together.

*Allen v. Lloyd's of London,* 94 F.3d 923, 928 (4th Cir. 1996) (*citing Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 595 (1991); *Bremen,* 407 U.S. at 12–13, 15, 18); *Gilman*, 345 Md. at 378.

Defendants argue that the forum selection clause was induced by fraud. As outlined in their pleadings, Defendants allege that the NDA was "fraudulent[ly] based on the Plaintiffs' successful scheme to collect $25,000 from the Defendants and refer them to a so-called 'funding source' which the Plaintiff knew would never fund the Dreamer's project." (ECF No. 36, at 6).

To challenge the clause on the basis of fraud or overreaching, a plaintiff must establish that "the inclusion of that clause [itself] in the contract was the product of fraud or coercion," not the agreement as a whole. *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 n.14 (1974). Defendants' allegations concerning the NDA, however, focus on the NDA overall, and make no allegation concerning the forum selection clause. (*See, e.g.*, ECF No. 14 ¶ 17, Counterclaim ("By the time the [NDA] wa[s] sent to Mr. Anthes; [Plaintiffs] knew that a suitable funding source for Dreamer's could not be located.")). Additionally, Defendants make no argument that the forum selection clause is fundamentally unfair, would deprive them of their day in court, or contravenes a strong public policy of

Maryland. Consequently, the forum selection clause is valid, applicable to the claims in this case, and enforcement against Defendants is not unreasonable.

## B. Motions to Seal

Defendants filed a motion to seal their counterclaims and third-party complaint due to their belief that it contains information that Plaintiffs may claim violate the NDA. (ECF No. 15). Plaintiffs filed a similar motion in regard to their answer because Defendants made their filings under seal and Plaintiffs do not want to violate the NDA. (ECF No. 33). Defendants later reversed themselves after Mr. Callender – during direct examination by his attorney at the preliminary injunction hearing – identified by name the funding source that Defendants sought to keep out of the public domain. (ECF No. 38).

"The right of public access to documents or materials filed in a district court derives from two independent sources: the common law and the First Amendment." *Va. Dep't of State Police v. Wash. Post*, 386 F.3d 567, 575 (4th Cir. 2004). "The common law presumes a right of the public to inspect and copy 'all judicial records and documents,'" *id.* at 575 (*quoting Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 178, 180 (4th Cir. 1988)), although this presumption "can be rebutted if countervailing interests heavily outweigh the public interests in access." *Id.*

(*quoting Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 253 (4th Cir. 1988)); *see also Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597-99 (1978). Under this common law balancing analysis, "[t]he party seeking to overcome the presumption bears the burden of showing some significant interest that outweighs the presumption." *Rushford*, 846 F.2d at 253. "Ultimately, under the common law[,] the decision whether to grant or restrict access to judicial records or documents is a matter of a district court's 'supervisory power,' and it is one 'best left to the sound discretion of the [district] court.'" *Va. Dep't of State Police*, 386 F.3d at 575 (*quoting Nixon*, 435 U.S. at 598-99) (second alteration in original).

In addition to the public's common law right of access, the First Amendment provides a "more rigorous" right of access for certain "judicial records and documents." *Va. Dep't of State Police*, 386 F.3d at 575-76; *see also In re Application of the United States for an Order Pursuant to 18 U.S.C. Section 2703(D)*, 707 F.3d 283, 290 (4th Cir. 2013) (explaining the "significant" distinction between the two rights of access). Where the First Amendment does apply, access may be denied "only on the basis of a compelling governmental interest, and only if the denial is narrowly tailored to serve that interest." *Stone*, 855 F.2d at 180; *see also, Doe v. Public Citizen*, --- F.3d ----, 2014 WL 1465728, at *14 (4th Cir. Apr. 16, 2014).

"For a right of access to a document to exist under either the First Amendment or the common law, the document must be a 'judicial record'" in the first instance. *In re Application*, 707 F.3d at 290. The Fourth Circuit recently held that judicially authored or created documents are "judicial records," as are documents filed with the court that "play a role in the adjudicative process, or adjudicate substantive rights." *Id.* (*citing Rushford*, 846 F.2d at 252; *In re Policy Mgt. Sys. Corp.*, 67 F.3d 296 (4th Cir. 1995) (unpublished table decision)). "[T]he more rigorous standard should . . . apply to documents filed in connection with a summary judgment motion in a civil case." *Va. Dep't of State Police*, 386 F.3d at 578 (*quoting Rushford*, 846 F.3d at 253) (alteration in original).

Thus, as a substantive matter, when a district court is presented with a request to seal certain documents, it must determine two things: (1) whether the documents in question are judicial records to which the common law presumption of access applies; and (2) whether the documents are also protected by the more rigorous First Amendment right of access. *In re Application*, 707 F.3d at 290; *see also Va. Dep't of State Police*, 386 F.3d at 576.

The sealing of any judicial records must also comport with certain procedural requirements. First, the non-moving party must be provided with notice of the request to seal and an

opportunity to object. *In re Knight Publ'g Co.*, 743 F.2d 231, 235 (4th Cir. 1984). This requirement may be satisfied by either notifying the persons present in the courtroom or by docketing the motion "reasonably in advance of deciding the issue." *Id. at* 234. In addition, "less drastic alternatives to sealing" must be considered. *Va. Dep't of State Police*, 386 F.3d at 576; *see also* Local Rule 105.11 (requiring any motion to seal to include both "proposed reasons supported by specific factual representations to justify the sealing" and "an explanation why alternatives to sealing would not provide sufficient protection"). Finally, if sealing is ordered, such an order must "state the reasons (and specific supporting findings)" for sealing and must explain why sealing is preferable over its alternatives. *Va. Dep't of State Police*, 386 F.3d at 576.

The parties fail to meet their burden. The motions to seal are based on the cursory reasoning that the document may contain information that could violate the NDA, but it is well-established that "parties cannot by agreement overcome the public's right of access to judicial records." *Cochran v. Volvo Grp. N. Am., LLC*, 931 F.Supp.2d 725, 729 (M.D.N.C. 2013); *see also Bureau of Nat'l Affairs v. Chase*, No. ELH-11-1641, 2012 WL 3065352, at *3 (D.Md. July 25, 2012) ("[p]rivate parties are entitled to enter into confidential agreements, but the courts ordinarily are not party to such promises of confidentiality.").

The parties have made no attempt to redact portions of the filings as opposed to sealing the documents in their entirety. *See Butler v. DirectSAT USA, LLC*, 876 F.Supp.2d 560, 576 n.18 (D.Md. 2012) ("In their motion to seal, Plaintiffs state only that they seek to seal exhibits pursuant to the confidentiality order, an explanation insufficient to satisfy the 'specific factual representations' that Local Rule 105.11 requires."). At the preliminary injunction hearing, the undersigned informed the parties as to the presumption of public access and encouraged them to file redacted copies. They have not done so. Furthermore, any concerns about confidentiality are diminished after Mr. Callender testified to the name of the funding source potentially covered by the NDA. Consequently, the motions to seal will be denied and the relevant documents will be ordered unsealed.

## III. Conclusion

For the foregoing reasons, the motion to remand this case to the Circuit Court for Calvert County, Maryland filed by Plaintiffs will be granted. The motions to seal filed by the parties will be denied. A separate order will follow.

                                    /s/
_____
DEBORAH K. CHASANOW
United States District Judge
